# EXHIBIT A

# Model Jury Instructions in Criminal Antitrust Cases

ABA SECTION OF ANTITRUST LAW



ABA
Defending Liberty
Pursuing Justice

This volume should be officially cited as:

ABA SECTION OF ANTITRUST LAW,
MODEL JURY INSTRUCTIONS IN CRIMINAL ANTITRUST CASES
(2009)

Cover design by ABA Publishing.

The materials contained herein represent the opinions of the authors and editors and should not be construed to be the action of either the American Bar Association or the Section of Antitrust Law unless adopted pursuant to the bylaws of the Association.

Nothing contained in this book is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. This book and any forms and agreements herein are intended for educational and informational purposes only.

© 2009 American Bar Association. All rights reserved.

Printed in the United States of America.

ISBN: 978-1-59031-865-2

Library of Congress Control Number is on file.

Discounts are available for books ordered in bulk. Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at ABA Publishing, American Bar Association, 321 N. Clark St., Chicago, Illinois 60610.

17 16     4 3 2

www.ababooks.org

Visit us

### G. Bid Rigging

The indictment charges the defendants with conspiring to rig bids. A conspiracy to rig bids is an agreement between two or more persons to eliminate, reduce, or interfere with competition for a job or contract that is to be awarded on the basis of bids. A conspiracy to rig bids may be an agreement among competitors about the prices to be bid, who should be the successful bidder, who should bid high, who should bid low, or who should refrain from bidding; or any other agreement with respect to bidding that affects, limits, or avoids competition among them.

The aim and result of every bid-rigging conspiracy, if successful, is the elimination of one form of competition.

If you should find that the defendants entered into an agreement to rig bids, the fact that the defendants or their coconspirators did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objectives, is not a defense. The agreement is the crime, even if it was never carried out.

[Evidence that the defendants and alleged coconspirators actually competed with each other has been admitted to assist you in deciding whether they actually entered into an agreement to rig bids. If the conspiracy charged in the indictment is proved, it is no defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that the conspirators did not attempt to collude with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all products [services] sold by the conspirators or did not affect all of their customers.]

[Evidence of the bids submitted by the defendants and alleged coconspirators has been admitted to assist you in deciding whether they entered into an agreement to rig bids. Such evidence may lead you to conclude that the defendants never entered into the agreement charged in the indictment or that they did enter into the agreement; or it may show that they made an agreement but failed to live up to it, or started undercutting one another right away, or submitted bids lower than those agreed upon to customers they did not want to lose. Or it may show that they became convinced that the whole scheme was unwise and should be

abandoned. Regardless of this type of evidence, if the conspiracy as charged existed, for any period of time, it was unlawful.]

[Evidence of similarity of business practices of the defendants and alleged coconspirators, or the fact that defendants may have submitted identical bids, does not alone establish an agreement to rig bids, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market.]

[The defendants and alleged coconspirators may bid the same price, choose not to bid, or submit a high bid; and such conduct would not violate the Sherman Act, unless you find that it was done pursuant to an agreement between two or more conspirators, as alleged in the indictment.]

[Nevertheless, you may consider such facts and circumstances along with all other evidence in determining whether the [evidence of bids actually submitted] [similarity of business practices] [similarity of bids] resulted from the independent acts or business judgment of the defendants and alleged coconspirators freely competing in the open market, or whether it resulted from an agreement among or between two or more of them.]

**NOTES**

This bid rigging instruction mirrors the price-fixing instruction.

It is important to tailor this instruction to the particulars of each case in which it is used. Illegal bid rigging can take various forms, such as comparing bids prior to submission, operating bid depositories, rotating bids, agreeing to refrain from bidding, knowingly submitting noncompetitive bids, and agreeing to rig bids by creating sham competition. To the extent possible, this instruction should be modified to reflect the specific conduct charged. For example, if an indictment charges the defendants with rigging the results of an auction by allocating in advance which of them will be the successful auction bidder, the following would be an appropriate opening paragraph of the modified instruction:

The indictment charges the defendants with conspiring to rig the results of an auction. An auction-rigging conspiracy is an agreement between two or more persons to eliminate, reduce, or interfere with competition

for a product, job or contract that is to be awarded on the basis of auction bids. In this case, defendants have been charged with conspiring to rig the results of the [auction title or description] by deciding in advance which of them should be the successful bidder on particular items.

The bracketed paragraphs should be incorporated in this instruction as appropriate given the evidence presented at trial. Such instructions may be presented to the court as stand-alone instructions. *See, e.g.*, ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases*, Nos. 4-8 at B-26 - B-31 (2005 ed.).

**ANTITRUST CASE SOURCES**

Transcript of Record at Instruction No. 29 (Nov. 21, 1995), *United States v. Prairie Farms Dairy* (S.D. Ind.) (No. EV-94-17-CR).