ALEXIS J. LOEB (CSBN 269895)
THOMAS GREENE (CSBN 57159)
KELSEY C. LINNETT (CSBN 274547)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
thomas.greene@usdoj.gov
Telephone: (415) 934-5300

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GLENN GUILLORY and<br>THOMAS JOYCE,<br><br>Defendants. | CASE NO. CR 14-00607 PJH<br><br>**UNITED STATES' SECOND NOTICE OF INTENT TO INTRODUCE EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B)** |

## INTRODUCTION

United States hereby provides notice as required by Criminal Local Rule 16-1(c)(3) that it intends to introduce additional "other acts" evidence at trial: ledgers tracking bid-rigging payments that include payments for rigged Alameda County properties (the charged conspiracy here is limited to bid-rigging in Contra Costa County). The ledgers are admissible either as inextricably intertwined with the charged bid-rigging conspiracy or under Federal Rule of Evidence 404(b) because they are probative of defendants' intent, lack of mistake, knowledge, and *modus operandi* of the bid-rigging agreements and rounds that form the basis of the conspiracy with which they are charged.

//

//

No. CR 14-00607 PJH
U.S.' SUPP. NOT. OF 404(B) EVID          1

## SUMMARY OF THE RELEVANT EVIDENCE

The government anticipates introducing materials in files seized by the Federal Bureau of Investigation on January 11, 2011 from the office of Community Fund, a company owned by Michael Marr, a defendant in a related case pending before the Court. The materials include two sets of ledgers: one concerning payments owed between defendant Joyce and Community Fund, and one concerning payments owed between cooperating witness Michael Renquist and Community Fund. The ledgers are Exhibits 94 and 110, and are attached to the Declaration of Thomas Greene as Attachments A and B.[1]

The ledgers track payments owed for "rounds" – secondary, private auctions that members of the conspiracy used to decide who would take title to bid-rigged properties and how much the new owner would have to pay other members of the conspiracy. The government is noticing these ledgers because all of the Renquist ledger and part of the Joyce ledger refer to Alameda County properties, not Contra Costa County properties (defendants are charged with conspiring to rig bids in Contra Costa County only). Because Community Fund employees participated in rounds in both counties, as did Renquist and defendant Joyce, and used common methods to keep track of payments and reconcile debts in both counties, the Community Fund ledgers are not separated by county.

## ARGUMENT

The Alameda County records of Messrs. Joyce and Renquist are admissible because they are "inextricably intertwined" with their activities in Contra Costa County or pursuant to Federal Rule of Evidence 404(b). The Joyce ledger and the Renquist ledger are important evidence of the defendants' practice of reconciling bid-rigging payments with coconspirators from Community Fund. In the case of defendant Joyce, his ledger provides direct evidence of his participation in the conspiracy. For defendant Guillory, the Renquist and the Joyce ledgers help explain the purpose of the exact same ledger for Guillory that Community Fund maintained (for example, they will help to establish that the Guillory/Community Fund ledger in fact tracks bid-rigging payments, not payments for some other purpose).

//

---

[1] The ledgers seized from Community Fund include ledgers tracking round debts between Community Fund and defendant Guillory, which have also been noticed as exhibits. These records cover transactions in Contra Costa County and are not subject to this notice.

## I. Joyce and Renquist's Alameda County Ledgers are "Inextricably Intertwined" with Their Activities in Contra Costa County

The Alameda County-specific material from Joyce and Renquist's ledgers are admissible primarily as inextricably intertwined evidence. The government does not intend to dwell on bid-rigging in Alameda County, but Joyce and Renquist attended the auctions in both Contra Costa and Alameda County during the time period at issue, as did Community Fund employees. They did not separate their payoff records by county. Admitting the files, including Alameda portions of the documents, is part of telling "a coherent and comprehensible story regarding the commission of the crime." *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013). Because the ledgers relating to defendant Joyce contain both Alameda and Contra Costa County properties, admitting only the Contra Costa-related portions of the documents would require extensive redactions and could raise questions within the jury.

While Renquist's ledger lists only Alameda County properties, Renquist should be able to testify to the form and purpose of the Community Fund ledgers because the exact same types of ledgers were used to track Contra Costa County round debts. Renquist's testimony will not go through the detail of Alameda County properties, but will instead concern recordkeeping practices in the charged conspiracy – albeit using an example that lists Alameda County properties.

Introducing the seized files therefore permits the government to accurately describe the conduct of defendant Joyce and defendant Guillory – specifically their participation in the rounds and their practice of reconciling round debts with Community Fund. *United States v. King*, 200 F.3d 1207, 1214 (9th Cir. 1999) (testimony regarding general nature of business is "inextricably intertwined" with evidence of the crime charged).

In addition, as the government noted in its initial Notice of Intent to Introduce Evidence Under Federal Rule of Evidence 404(b) (Dkt.187), the fact that defendant Joyce was indicted in only one county should not preclude the admission of evidence of acts in another county committed at the same time, pursuant to the same *modus operandi*. The Ninth Circuit has recognized that limits on "other acts" evidence are inapplicable "when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987); *see* Dkt. 187 at 4.

## II. The Alameda County Records for Joyce and Renquist are Separately Admissible Under Federal Rule of Evidence 404(b)

Even if the Court determines that the ledgers at issue are not inextricably intertwined with the charged conspiracy, they are still admissible under Federal Rule of Evidence 404(b). The argument for admitting the Alameda County ledgers under Rule 404(b) is similar to the arguments for admitting defendant Joyce's Alameda County records, the subject of the government's initial Rule 404(b) notice.

The Ninth Circuit has made clear that Rule 404(b) should operate as a "rule of inclusion," and that "[e]vidence of other crimes or acts is admissible under Rule 404(b), except where it tends to prove *only* criminal disposition." *United States v. Ayers*, 924 F.2d 1468, 1472–73 (9th Cir. 1991). As explained in the government's initial notice, a four-part test determines whether evidence is admissible under Rule 404(b). In *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004), the Ninth Circuit held that other acts evidence can be admitted under Rule 404(b) if: first, it proves a material point; second, the other act is not too remote in time; third, the evidence is sufficient to show that the defendant committed the other act; and fourth, that the acts are similar to the offense charged, in cases where knowledge and intent are at issue. *See also United States v. Estrada*, 453 F.3d 1208, 1213 (9th Cir. 2006) (applying same test and recognizing distinction between evidence sufficient to support a finding, which the test requires, and conclusive evidence, which the test does not require).

The evidence of witness Renquist and defendant Joyce's participation in nearly identical conduct in Alameda County (as seen in the seized Community Fund ledgers) easily meets all four parts of the Ninth Circuit's test. As for the first factor, the ledgers and Renquist's testimony regarding the ledger will be introduced for material, non-propensity reasons: to show Joyce's and Guillory's intent to agree to rig bids, knowledge, lack of mistake, and *modus operandi*. These records show a pattern of precise pay-offs for agreements not to bid at public auctions and participation in subsequent rounds among conspirators. These records also demonstrate that participants "offset" what they owed against what they were owed. Renquist's testimony regarding his ledger will also validate the accuracy and explain the purpose of the records that were also maintained for defendants Guillory and Joyce. In addition, evidence of participation in other uncharged anticompetitive conspiracies is probative of knowledge, intent, and lack of mistake in cases alleging a violation of the Sherman Act. *See, e .g.*, *United States v.*

*Southwest Bus Sales*, 20 F.3d 1449, 1455-56 (8th Cir. 1994) ("Rule 404(b) evidence has been admitted to prove intent and lack of mistake in Sherman Act and mail fraud trials.").

As to the second factor, the acts in Alameda County were contemporaneous with defendants' conduct in Contra Costa County. With respect to the third factor, the evidence of involvement in the Alameda County auctions is strong, coming from cooperating witnesses, Joyce's and Renquist's admissions to the FBI, and Joyce's own notebook (the subject of the United States' previous Rule 404(b) notice).

Finally, as to the fourth factor, the admission of the records from the F.B.I. search and witness testimony will also show a common *modus operandi* between the bid-rigging conduct in Alameda County and the charged conduct: specifically, the use of private, secondary auctions to award properties and determine payoffs. Given these similarities, the evidence is highly probative of the defendants' bid-rigging practices as charged in the indictment. *See United States v. Marashi*, 913 F.2d 724, 735 (9th Cir. 1990) (admitting evidence that defendant previously erased entries in his billing books to establish the *modus operandi* of defendants' tax evasion because the double set of appointment books as well as the erasing of information were similar to the charged double-ledger scheme); *United States v. Melvin*, 91 F.3d 1218, 1223 (9th Cir. 1996) (holding evidence of other acts to be admissible where "[t]he uncharged schemes were similar in nature to the . . . schemes for which [defendant] was charged").

The purpose of this notice is to comply with Criminal Local Rule 16-1(c)(3). This notice is submitted in an abundance of caution, as the evidence described in this notice is inextricably intertwined with the charged conspiracy. The government reserves the right to supplement or revise this notice as it prepares for trial.

DATED: December 27, 2016　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　THOMAS GREENE
　　　　　　　　　　　　　　　　　　　　　ALEXIS J. LOEB
　　　　　　　　　　　　　　　　　　　　　KELSEY C. LINNETT
　　　　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　　　　Antitrust Division
　　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice