1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

　　v.

THOMAS JOYCE,

　　　　　Defendant.

Case No.  14-cr-00607-PJH-4

**PRETRIAL ORDER NO. 2**

Doc. nos. 166, 174, 179, 183, 184, 185, 187, 189, 191, 193, 195, 197, 207, 215, 221, 223, 225

　　　　This matter initially came on for pretrial conference and motion hearing on January 11, 2017.  Counsel for defendant Thomas Joyce ("defendant") informed the court that counsel for codefendant Glenn Guillory, Marcus Merchasin, was recently hospitalized and unavailable to appear.  Accordingly, the court indicated that it would likely sever the defendants for trial and continued the pretrial conference and motion hearing to January 13, 2017.  Because Mr. Merchasin remained unavailable to appear at the January 13, 2017, hearing, the court severed Guillory's case and proceeded with the pretrial conference as to defendant Joyce.  As stated on the record and summarized below, the court rules on the motions in limine and other disputed pretrial matters as follows:

**I.　　Severance**

　　　　At the pretrial conference, counsel for defendant Joyce informed the court that Mr. Merchasin was recuperating from surgery and gave no indication when he would be able to appear for pretrial or trial proceedings.  Codefendant Guillory stated on the record that he spoke to his attorney, who told Guillory that he would not be able to appear for trial on the January 23, 2017, trial date.  Due to the continued unavailability of Mr. Merchasin,

and the lack of information about when he would be able to appear for pretrial proceedings and for trial, the court determined that continued joinder of defendants would result in undue delay, given the need to continue Guillory's trial indefinitely and the limited availability on the court's calendar to reschedule a joint trial, which would require at least eight trial days.  Counsel for Joyce initially objected to severance and requested a continuance of the trial because he and Mr. Merchasin had shared responsibilities in preparing for the pretrial motions and for trial, but conceded that a one-week continuance of the trial date would ameliorate the concerns about defending the trial alone.  The government consented to severing defendants for trial.

Upon weighing the concerns of prejudice to Joyce's defense, which were reduced by continuing the trial date; Guillory's stated desire to continue being represented by his retained counsel, Mr. Merchasin, who is unavailable for an indefinite period; and concerns for judicial efficiency and management of the court docket, the court ordered that defendants Guillory and Joyce be severed for trial pursuant to Rule 14.  The court further granted a one-week continuance of Joyce's trial date to allow defense counsel additional time to prepare for trial.

## II.      Motions in Limine

### A.      Government's Motions in Limine (doc. no. 179)

1.      The government's motion in limine ("MIL") No. 1 to prohibit defendant from introducing evidence or argument that the bid-rigging agreements were reasonable, or that the victims were negligent about the bid-rigging conduct, is GRANTED pursuant to the court's earlier ruling in Pretrial Order No. 1 denying defendants' motion to adjudicate the Sherman Act count pursuant to the rule of reason.  Doc. no. 139.  There, the court held that bid-rigging is widely recognized as a form of price-fixing, which is "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 5 (1958).  The court further ORDERS that the government shall refrain from referring to the banks, trustees, and beneficiaries as "victims," given that the

1   government does not need to prove any injury or financial loss as an element of bid-

2   rigging, and shall instead refer to them as banks, trustees and beneficiaries.

3         2.      The government's MIL No. 2 to admit evidence of cooperating

4   witnesses' guilty pleas and plea agreements, as properly considered by the jury in

5   evaluating witness credibility, is GRANTED subject to the following procedures:

6         (a) The truthfulness provisions of the plea agreements must remain

7   redacted, unless the witness's credibility is attacked.  *See U.S. v. Monroe*, 943

8   F.2d 1007, 1013 (9th Cir. 1991) ("a reference to the 'truthful testimony' provisions

9   of a witness's agreement with the government does not constitute vouching if it is

10  made in response to an attack on the witness's credibility because of his plea

11  bargain").

12        (b) The government's questioning during its case-in-chief is limited to the

13  existence and terms of the guilty pleas and plea agreements, including the factual

14  basis of the plea, the fact that the cooperator has yet to be sentenced, and the

15  hope of receiving a reduced sentence partly due to their testimony at trial.

16        (c) References to the potential sentence or potential maximum statutory

17  sentence that the cooperator could receive must be redacted because it may

18  signal to the jury the punishment that defendant is facing, though that is a

19  prohibited consideration; however, the court may permit evidence of a mandatory

20  minimum sentence that a witness faces in the absence of a motion by the

21  government.  *See U.S. v. Larson*, 495 F.3d 1094, 1106 (9th Cir. 2007) (en banc)

22  (district court may prohibit cross-examination regarding the potential maximum

23  statutory sentence that the witness faces, which lacks significant probative force

24  because a defendant seldom receives the maximum penalty permissible under the

25  statute of conviction; by contrast, the mandatory minimum sentence that a witness

26  will receive in the absence of a government motion is "highly relevant to the

27  witness' credibility").

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(d)  To minimize the risk of undue prejudice to defendant by introducing evidence of the cooperating witnesses' plea agreements, the court will give limiting instructions based on Ninth Circuit Model Criminal Jury Instruction 4.9 and the ABA model instructions for criminal antitrust cases, as proposed by the parties. *See* Proposed Instruction Nos. 37, 38 (doc. no. 191).

Under settled Ninth Circuit authority recognizing the probative value of plea agreements for evaluating witness credibility, the court holds that the probative value of evidence of the plea agreements, as limited herein, is not "substantially outweighed by a danger of" unfair prejudice to defendant pursuant to FRE 403.  *U.S. v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981) ("evidence of the plea is relevant to credibility regardless whether government or defendant initiates inquiry about it"); *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976).

       3.     The government's MIL No. 3 to exclude any evidence or argument impeaching a witness by introducing evidence of conviction of a crime pursuant to FRE 609(a) is GRANTED as unopposed as to witnesses Kramer, Wong, Vesce and Renquist, in light of defendant's concession that none of the prior convictions disclosed by the government meet the standard for impeachment under the rules of evidence.  With respect to witness Barta, the government withdrew its MIL No. 3 to exclude evidence of Barta's 2007 application for a mortgage and home-equity line of credit after conceding its admissibility as impeachment evidence.  The government's MIL No. 3 with respect to excluding evidence of citizen complaints is GRANTED on the ground that the prejudicial effect would outweigh any limited probative value of the complaints from private citizens, which were not vetted for accuracy or investigated, and the complaints from private citizens and the California Dept. of Transportation which are not relevant to the bid-rigging conspiracy and/or are not probative of character for truthfulness.

       4.     The government's MIL No. 4 to admit business records and public records under FRE 803(6), (8) and (15), and self-authenticating documents pursuant to

FRE 902(1), (4) and (11) is PROVISIONALLY GRANTED, subject to objections that the defense may raise at trial as to specific documents.

5.      The government's MIL No. 5 to exclude evidence or argument about nontestifying coconspirators is GRANTED as unopposed.  If either party seeks to refer to a nontestifying coconspirator's plea agreement or pending indictment, the party must first make a proffer for its admissibility.

6.      With respect to the government's notice of intent to admit summary charts pursuant to FRE 611(a), doc. no. 189, the court determines that the charts proffered by the government would avoid wasting time from introducing all the underlying documents.  The court further determines that the charts do not appear to be argumentative or to include selective information from the underlying documents, as with the summary charts that were ruled inadmissible in the first trial in *U.S. v. Florida*, CR 14-582.  The court will admit non-argumentative charts as summary charts under FRE 611(a).  The charts may also be admissible or useable as demonstratives under FRE 1006.  *See U.S. v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (summary chart was properly admitted where use of the chart in court contributed to the clarity of the presentation to the jury, avoided needless consumption of time and was a reasonable method of presenting the evidence).  Defendant did not object to the information summarized in the charts, but disputed the absence of information about the trustee sale numbers corresponding to the auction records summarized in the chart marked Appendix D.  The parties are ordered to further meet and confer on including the trustee sale numbers on the summary chart.

B.      **Defendant's Motions in Limine**

1.      Defendant's MIL No. 1 to exclude references to other bid-rigging trials, which was initially filed as a joint motion with codefendant Guillory, is DENIED on the ground that evidence related to other bid-rigging trials may be introduced as relevant background, subject to the instruction that the parties should minimize any references to trials involving bid-rigging in counties other than Contra Costa County.  Doc. no. 185.

2.      Defendant's MIL No. 2 to grant additional peremptory challenges is DENIED AS MOOT following severance of Joyce and Guillory's trials.

3.      Defendant's MIL to exclude wholesale admission of his statements to the FBI and his binder of personal records that he turned over to the FBI is narrowed down to the following two disputes: (1) defendant's statement to the FBI about observing rounds in Alameda County, and (2) defendant's notes reflecting amounts received by Gee.  Doc. no. 197.  Defendant's MIL and request for evidentiary hearing to exclude these statements or notes is DENIED on the ground that the references to bid-rigging in Alameda County are relevant to show defendant's knowledge and lack of mistake with respect to the bid-rigging activity.  The government represents that only the pages from defendant's binder referring to Contra Costa County properties have been marked as exhibits.  To address defendant's concerns about undue prejudice or cumulative evidence about Alameda County activity, the court will allow the government to show the jury the binder from which the pages were taken and admit only the individually marked pages.

4.      With respect to the government's notices of intent to introduce FRE 404(b) evidence, doc. nos. 187 and 221, defendant objects to evidence related to his participation in Alameda County activity, including witness testimony, as cumulative and unduly prejudicial in light of his statements to the FBI.  Doc. no. 206.  Defendant's objection is OVERRULED in light of the court's instruction to keep references to Alameda County activity as minimal as possible and on the ground that the government has demonstrated that the witness testimony about Joyce's participation in Alameda County is inextricably intertwined with the charged conspiracy and necessary to give a cohesive explanation about Joyce's business and the context for the spreadsheet and other documents in the binder.  The government has also demonstrated that witness testimony about defendant's participation in Alameda County auctions and rounds is admissible as other acts evidence pursuant to FRE 404(b).  Doc. no. 187 at 4-6 (citing *U.S. v. Verduzco,* 373 F.3d 1022, 1027 (9th Cir. 2004)).  Defendant's objection to the notice of

FRE 404(b) evidence as insufficient and lacking specificity about the witness testimony is OVERRULED.  Rule 404(b) requires only "reasonable notice in advance of trial," which is satisfied here.  *See United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999) ("reasonable notice is designed to reduce surprise and promote early resolution of admissibility issues") (citation omitted).

The government has indicated its intent to introduce two sets of ledgers seized by the FBI from the office of Community Fund, which is owned by Michael Marr who is charged in a separate case, *U.S. v. Marr,* CR 14-580, but has not sufficiently demonstrated how the ledgers will be authenticated pursuant to FRE 901(a).  Doc. no. 221.  "The government need only make a prima facie showing of authenticity, as the rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.  The government must also establish a connection between the proffered evidence and the defendant." *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (citations and internal marks omitted).  The government states that Renquist will testify about the form and purpose of the Community Fund ledgers because the exact same type of ledgers were used to track Contra Costa County round payments, but the government has not shown that Renquist has any first-hand knowledge about the ledgers kept by Community Fund, particularly the ledgers relating to defendant.  Doc. no. 221 at 3.  Accordingly, the ledgers seized from Community Fund's offices will not be admitted unless the government establishes a proper foundation to authenticate those records, such as through the testimony of a witness with personal knowledge.  FRE 901(b)(1) ("Testimony that an item is what it is claimed to be.").

5.      Defendant's pretrial conference statement raised requests for disclosures.  Doc. no. 193.  The government confirmed that the requested materials in its possession have been produced to the defense, and that it will continue to meet its disclosure obligations.  The government also stated that it has disclosed the identity of the confidential source, who will testify under his or her true name.

United States District Court
Northern District of California

III.     **Coconspirator Statements**

    A.     **Legal Standard**

        In order for a coconspirator statement to be *admissible* at trial under Federal Rule of Evidence 801(d)(2)(E), the prosecution must show by a preponderance of the evidence that:

        (1) the conspiracy existed when the statement was made;

        (2) the defendant had knowledge of, and participated in, the conspiracy; and

        (3) the statement was made "in furtherance" of the conspiracy.

*United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006), *adopted in relevant part on reh'g en banc*, 495 F.3d 1094, 1096 n.4 (9th Cir. 2007).  However, the *introduction* of coconspirator statements is distinct from the issue of *admissibility*.  That is in part because the court considers all of the evidence, even the defendant's evidence, in making the ultimate admissibility determination.  *See* GRAHAM, 30B FEDERAL PRACTICE & PROCEDURE, EVIDENCE § 7025 at 303-04 (2011 interim ed.) ("[a]t the conclusion of the presentation of evidence, the trial court on motion must determine *on all the evidence including evidence offered by the defendant* whether the government has established the requisite foundation to be more probably true than not true") (emphasis added).

        It is within the court's discretion to determine the order of proof or the showing, if any, that is appropriate prior to the government's *introduction* of the coconspirator statements.  *United States v. Arbelaez*, 719 F.2d 1453, 1460 (9th Cir. 1983) (concluding that it was not an abuse of discretion for the court to allow the government to introduce coconspirator statements prior to establishing prima facie the existence of a conspiracy).  Courts have utilized various approaches regarding the order of proof.  One such approach has been the provisional or conditional admission of the statement subject to it later being "connected up" at "the conclusion of the presentation of evidence," at which time the court must determine whether the government has established the requisite foundation (as set forth by the Ninth Circuit in *Larson*) to be more probably true than not true.  *See* GRAHAM, 30B FEDERAL PRACTICE & PROCEDURE, EVIDENCE § 7025; MUELLER &

KIRKPATRICK, 4 FEDERAL EVIDENCE § 8:62, Procedure for Applying Coconspirator Exception (4th ed., updated May 2016); *Arbelaez*, 719 F.2d at 1460.

Another approach includes what has essentially been deemed a mini-trial or *James* hearing in advance of trial at which the court may consider each proffered coconspirator statement and determine whether the government has established the required foundational requirements as to each statement.  *See* GRAHAM, FEDERAL PRACTICE & PROCEDURE, EVIDENCE § 7025 (citing *United States v. James*, 590 F.2d 575, 581-82 (5th Cir. 1979) (en banc)).  In a third approach, which has been deemed the "middle course," the court requires the government to make a preliminary showing or summary of its evidence establishing the predicate facts, while deferring the final decision until the conclusion of the presentation of the evidence.  *See* MUELLER & KIRKPATRICK, 4 FEDERAL EVIDENCE § 8:62; *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) (the "preferable procedure would be to at least require the government to preview the evidence which it believes brings the statements within the coconspirator rule before delving into the evidence at trial").

This court adopts the "middle course" on the government's requisite showing prior to introduction of the coconspirator statements.  In accordance with this approach, the court will preview prior to trial a summary of the coconspirator statements to be offered by the government.  Following this preview, the court will determine which statements the government will be permitted to introduce, either through the testimony of a witness or by documentary evidence.  Even though the ultimate finding as to admissibility will not be made until after the trial has commenced and perhaps as late as the close of the evidence, the witnesses will be permitted to testify about coconspirator statements and documents containing such statements will be published to the jury, subject to striking should the government not be able to meet its burden as to all requirements for admissibility.  In this sense, the government's introduction of the statements which will have been previewed and approved by the court, will result in their conditional admission.

United States District Court
Northern District of California

The court may at some point during trial, and prior to the close of the evidence, rule on whether the government has shown by a preponderance of the evidence two of the three prongs required for the admissibility of all of the proffered coconspirator statements, including that (1) the conspiracy existed when the statement was made; and (2) that the defendant had knowledge of, and participated in, the conspiracy. *Larson*, 460 F.3d at 1212. The court, however, will not determine until *after* the witness testifies and/or the documentary evidence containing the particular coconspirator statement is introduced whether or not the government has shown by a preponderance of the evidence that the statement was made "in furtherance" of the conspiracy. *See id.* A coconspirator statement will NOT be unconditionally admitted into evidence until the court has determined that all three *Larson* prongs have been satisfied as to that statement.

As set forth in *United States v. Coleman*, CR 11-904 PJH, and *United States v. Zaragoza*, CR 08-83 PJH, the court has established a protocol requiring the government to disclose the following information with a list of the coconspirator statements to be introduced at trial:

(1) the identity of the testifying witness and/or the source of the conspirator statement;

(2) a statement describing the witness and/or the source of the conspirator statement;

(3) a summary of the evidence showing that the proffering witness, if a coconspirator, knew about and participated in the conspiracy;

(4) the *specific* coconspirator statements to be introduced via that witness and/or the source of the conspirator statement;

(5) the identity of the declarant of *each* specific coconspirator statement; and

(6) a summary of the evidence showing that *each* declarant of the coconspirator statement(s) knew about and participated in the conspiracy.

*Zaragoza,* doc. no. 574 (Amended Order for Pretrial Preparation). The government must also provide particulars of when the proffered statement was made, to establish that it

1   was made during the relevant period.  *Larson*, 460 F.3d at 1211 (requiring the

2   government to establish that "the conspiracy existed when the statement was made").

3   This requirement may be satisfied by providing sufficient detail to determine whether the

4   statements were made in the course of, and in furtherance of, the conspiracy, and does

5   not require the government to identify the exact date and time that the statement was

6   made.  *See Coleman,* doc. nos. 97 (granting in part motion to clarify pretrial order) and

7   122 (clarifying pretrial order).

8       **B.    Discussion**

9       The government timely filed its initial notice of coconspirator statements in

10  compliance with the court's disclosure protocol.  Doc. no. 166.  Defendant timely filed

11  objections to the coconspirator statements.  Doc. no. 194.  The government filed four

12  supplemental notices of coconspirator statements, to which the court extends defendant's

13  objections.  Doc. nos. 174, 215, 223, 225.

14      The government prepared charts organizing the coconspirator statements by type

15  of document, and specifying the date of the alleged coconspirator statement:

16          (A) round sheets which tracked the individuals participating in each round,

17          the order of bidding, amount of each coconspirator's terminal bid, and the

18          winner of the round.  *See* Appx. A; Suppl Appx. A; 2d Suppl. Appx. A.

19          (B) payment ledgers which listed the properties in which coconspirators

20          participated in a round, and the amount of payoff on each property.  *See*

21          Appx. B and Suppl. Appx. B; 2nd Suppl. Appx. B.

22          (C) emails regarding payments owed for rounds.  *See* Appx. C.

23          (D) consensual audio-video recordings of coconspirator statements.  *See*

24          Appx. D.

25          (E) other documents containing coconspirator statements: notes on the

26          memo lines of payoff checks, and other coconspirator notes relating to

27          meetings and payoffs such as Outlook calendar entries noting the dates of

28          payoffs and Wesley Barta's notes summarizing the results of rounds.  *See*

United States District Court
Northern District of California

11

Appx. E; Suppl. Appx. E; 2d Suppl. Appx. E.

(F) anticipated testimony of witnesses about what coconspirators said to reach agreements.  The summary chart in Appendix F is taken from witness interview reports, which have not been reviewed or adopted by the witnesses, and are not verbatim transcripts.  *See* Appx. F; Suppl. Appx. F.

To satisfy the first *Larson* prong, the government's brief in support of the notice establishes the existence of a conspiracy among competitors not to bid against each other at public auction, involving 3 steps: (a) refraining from bidding against each other for certain properties at the public auction; (b) negotiating payoffs at the secondary auctions, also known as round robins or rounds, or "step-aside" payments; (c) completing the sale by submitting a Receipt of Funds to the auctioneer, receiving the Trustee's Deed in the mail, and making and receiving payoffs, either by cash or check.  Doc. no. 166 at 5-7 and Bond Decl.

To establish the second *Larson* prong, the government has sufficiently demonstrated that the defendant had knowledge of, and participated in, the conspiracy with the information provided in Appendices A through F, except as to anonymous documents which lack authentication, i.e., typewritten portions of ledgers that were seized from coconspirator Michael Marr's office, listed in Appendix B, and unidentified handwriting on round sheets that were produced by cooperating coconspirators, listed in Appendix A.  The government contends that these documents written by unidentified authors are admissible as coconspirator statements because there is strong circumstantial evidence that the documents were made by conspirators in furtherance of the charged conspiracy.  Doc. no. 166 at 13 (citing *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005) ("An anonymous statement may be admissible under Rule 801(d)(2)(E) if circumstantial evidence permits a finding by a preponderance of the evidence that there was a conspiracy involving the author and the defendant, and the statement was made in the course and furtherance of the conspiracy."); *United States v.*

*Helmel*, 769 F.2d 1306, 1313 (8th Cir.1985) ("What is essential is that the government show that the unknown declarant was more likely than not a conspirator.").

The government relies on out of circuit authority to support its contention that it only needs to prove that the anonymous statements were necessarily written by someone in the conspiracy, without having to provide positive proof to identify the author to establish admissibility as coconspirator statements.  Doc. no. 166 at 14 (citing *Helmel*, 769 F.2d at 1313) (requiring the government to show only that the unknown declarant was more likely than not a conspirator, without proving the declarant's identity).  The Ninth Circuit has not, however, expressly adopted this standard.  Current Ninth Circuit authority requires the government to identify, at least by a preponderance of the evidence, the declarant of anonymous statements that are proffered as coconspirator statements.  In *United States v. Mouzin*, 785 F.2d 682, 692-93 (9th Cir. 1986), the court held that an anonymous cocaine distribution ledger found in the home of the defendant was not admissible as the statement of a coconspirator under Rule 801(d)(2)(E), for lack of a proper foundation, reasoning that "[k]nowledge of the identity of the declarant is essential to a determination that the declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy."  Here, the anonymous ledgers seized from Marr's office and unidentified handwriting on round sheets similarly suffer from lack of foundation to authenticate those documents.

To establish the admissibility of the anonymous documents as coconspirator statements, the government cites Ninth Circuit authority applying the preponderance of the evidence standard for identifying the author of anonymous statements, but those cases do not hold that anonymous statements are admissible as coconspirator statements based on evidence showing that the statements would have been made by an unidentified coconspirator, as the government seems to suggest.  In *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995), the court held that the government proved by a preponderance of the evidence that anonymous ledgers were the defendants' statements, citing circumstantial evidence that the ledgers were located in the

defendants' residences and entries corresponded to surveilled activities. *See also United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir. 1990) (holding that the evidence amply supported the government's theory that an anonymous calendar/drug ledger was authored by a named coconspirator and that the trial court did not err in admitting it into evidence under FRE 801(d)(2)(E)); *United States v. Schmit,* 881 F.2d 608, 610 (9th Cir. 1989) (holding that circumstantial evidence was sufficient to show that a named coconspirator (the defendant's son) was the author of anonymous handwritten notes under a preponderance of the evidence standard to show admissibility under FRE 801(d)(2)(E)). Unlike the ledgers at issue in *Gil* which were found in the defendants' home, or the anonymous documents admitted in *Florida* which were seized from the defendants' offices, the anonymous documents proffered by the government here were not located in Joyce's home or office, but rather seized from the offices of a defendant charged in another case or provided by a cooperating coconspirator. The government's argument that these documents were more likely than not authored by an unnamed participant in the conspiracy does not establish an adequate foundation for their admissibility.

With respect to anonymous round sheets and ledgers proffered as coconspirator statements, in the absence of a proper foundation for admissibility required by *Mouzin* and for authentication under FRE 901(a), the proffered statements by an "unidentified" author will not be admitted under FRE 801(d)(2)(E). *See, e.g.*, Appx. A, Exs. 100, 123, 145, 161, 218; Appx. B, Exs. 70-74, 250.

Except for the anonymous coconspirator statements discussed above, the government has sufficiently specified (A) the round sheets, (B) payoff ledgers, (C) emails, and (E) other miscellaneous documents, by providing copies of those categories of documents. The government also provided transcripts of the excerpts of the (D) audio-video recordings containing the coconspirator statements, identifying those statements with sufficient specificity.

1    With respect to witness testimony, defendant objects to the notice of coconspirator

2  statements provided in Appendix F for lack of specificity, particularly as to the time frame

3  of the alleged coconspirator statements which are generally indicated only in years.  Doc.

4  no. 194 at 3.  Defendant's objection based on lack of specificity is OVERRULED on the

5  ground that the government provided highlighted portions of the underlying FBI witness

6  interview reports to identify the coconspirator statements with sufficient specificity to give

7  the defense notice of the anticipated witness testimony.

8  **IV.     Jury Instructions**

9         **A.     Jointly Proposed Instructions**

10   The court adopts the jury instructions proposed jointly by the parties.  Doc. no.

11  191.  The parties must file a final set of the jury instructions, reflecting the court's pretrial

12  rulings on all the proposed instructions and referring to a single defendant, by the first

13  day of trial, as well as a blind copy without citations.

14         **B.     Disputed Instructions**

15   The court rules on the instructions that were subject to dispute as follows:

16         **1.   Instruction No. 15: Charged Offense**

17   The government proposes a new ABA model instruction stating the relevant

18  provisions of Section 1 of the Sherman Act.  The government contends that the

19  instruction gives context to the Sherman Act references in several other instructions, and

20  that the text of the statute makes plain the importance of the concept of conspiracy in the

21  statutory scheme.  Doc. no. 204 at 1.  Defendant objects to this instruction as duplicative

22  and unnecessarily emphasizing selective portions of other jury instructions which cover

23  the alleged bid rigging conspiracy.  Doc. no. 207 at 3.  Here, only a single count is at

24  issue, making a statement of the relevant statute unnecessary and potentially prejudicial.

25  As noted in the ABA commentary to the model instruction, "This is a standard criminal

26  antitrust instruction but is not always given."  ABA Section of Antitrust Law, *Model Jury*

27  *Instructions in Criminal Antitrust Cases* (2009) at 43.  Accordingly, the government's

28  proposed instruction No. 15 is STRICKEN.

### 2.  Instruction No. 16: Per Se Violations of Antitrust Law

The court ADOPTS proposed instruction No. 16 as unopposed.  Doc. no. 207 at 3.

### 3.  Instruction No. 18: Bid Rigging

The government objects to including the following modification to the ABA model bid-rigging instruction, as it was given in *Florida*, as unnecessary: "An internal agreement only between owners and employees of the same company does not constitute a conspiracy."  Doc. no. 191.  As defendant does not object to deleting this modification following severance of Guillory's trial, this sentence is STRICKEN from proposed Instruction No. 18.

The government also objects to giving the last three optional bracketed paragraphs from the model ABA instruction, which were given in the first *Florida* trial, on the ground that the language relates to conspirators submitting complementary bids which it contends is inapposite here.  Defendant objects to removing the optional ABA model language.  The court determines these optional paragraphs from the ABA model instruction are not restricted to certain contexts, as the government contends, except for the phrase instructing that the evidence may show that the defendants "submitted bids lower than those agreed upon to customers that they did not want to lose."  Other than that specific phrase, the court ADOPTS the optional ABA model language in proposed Instruction No. 18 as helpful to the jury in weighing the evidence, subject to modification to refer to a single defendant:

> Evidence of the bids submitted by the defendants and alleged coconspirators has been admitted to assist you in deciding whether they entered into an agreement to rig bids. Such evidence may lead you to conclude that the defendants never entered into the agreement charged in the indictment or that they did enter into an agreement; or it may show that they made an agreement but failed to live up to it, or started undercutting one another right away~~, or submitted bids lower than those agreed upon to customers that they did not want to lose~~. Or it may show that they became convinced the whole scheme was unwise and should be abandoned. Regardless of this type of evidence, if the conspiracy as charged existed, for any period of time, it was unlawful.

United States District Court
Northern District of California

1
2
3

> Evidence of similarity of business practices of the defendants and alleged coconspirators does not alone establish an agreement to rig bids, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market.

4
5
6
7

> Nevertheless, you may consider such facts and circumstances along with all other evidence in determining whether the evidence of bids actually submitted or similarity of business practices resulted from the independent acts or business judgment of the defendants and alleged coconspirators freely competing in the open market, or whether it resulted from an agreement among or between two or more of them.

8  Doc. no. 191.

9  ### 4.  Instruction No. 19: Elements of Conspiracy

10  Because defendant is charged with a sole count of bid-rigging, and not a separate

11  conspiracy count, the court determines that a separate model instruction on the elements

12  of conspiracy, No. 19, is unnecessary and potentially confusing, in light of stipulated

13  Instruction No. 17 on the elements of the bid-rigging offense.  However, the Ninth Circuit

14  model criminal jury instruction § 8.20, on which No. 19 is based, contains other language

15  that will be given as helpful to the jury.  The court therefore STRIKES lines 3-11 of

16  Instruction No. 19 on the elements of conspiracy, and ORDERS the parties to meet and

17  confer on relocating the remaining language of the model instruction.

18  Defendant objects to the single conspiracy statement that the government

19  proposed in Instruction No. 19, "a single conspiracy may involve several subagreements

20  or subgroups of conspirators," which was given in the first *Florida* trial.  The government

21  insists that this language is necessary if the court gives the multiple conspiracies

22  instruction (proposed instruction No. 22), which defendant requests over the

23  government's objection.  The court determines that both instructions on single conspiracy

24  and multiple conspiracies will assist the jury, and adopts the single conspiracy instruction

25  from Instruction No. 19 to be given with the Ninth Circuit model instruction on multiple

26  conspiracies, No. 22.

27
28

United States District Court
Northern District of California

United States District Court
Northern District of California

**5.   Instruction No. 21: Owner or Superior-Individual Responsibility**

In light of the court's order severing defendant's trial from Guillory's trial, the government withdrew its proposed instruction No. 21, which is hereby STRICKEN.

**6.   Instruction No. 22: Multiple Conspiracies**

As held above, the court will give proposed Instruction No. 22, based on the Ninth Circuit model instruction on finding multiple conspiracies, with the following single conspiracy instruction: "A single conspiracy may involve several subagreements or subgroups of conspirators."  *See United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984) (citing *United States v. Tille*, 729 F.2d 615, 621 (9th Cir. 1984)).  The government's proposed modification further elaborating on subagreements is STRICKEN as unnecessary and potentially over-emphasizing a single conspiracy.  Doc. no. 204 at 9.

Defendant's proposed modification to the Ninth Circuit model instruction, to add the factors that the Ninth Circuit applies to determine the sufficiency of the evidence to support a conviction based on a single conspiracy, is STRICKEN as potentially confusing and failing to give the jury any guidance on how to weigh the factors, which are applied by courts to determine the sufficiency of evidence of a single conspiracy.  Doc. no. 195 at 2 and Ex. A.  As the commentary to the Ninth Circuit model instruction states, "This instruction obviates the need for further instructions on multiple conspiracies." (Citing *United States v. Si*, 343 F.3d 1116, 1126–27 (9th Cir. 2003).)

**7.   Instruction No. 23: Interstate Commerce**

The court ADOPTS proposed Instruction No. 23 as unopposed.  Doc. no. 207 at 3.

**8.   Instruction No. 37: Testimony of Witnesses Involving Special Circumstances - Immunity, Benefits, Accomplice, Plea**

The court ADOPTS proposed Instruction No. 37 as unopposed.  Doc. no. 207 at 3. At the close of evidence, the parties are instructed to modify this instruction to add the specific names of the relevant government witnesses.

1   **V.      Juror Questionnaire and Voir Dire**

2          As the court stated at the pretrial conference, the court prepared a written juror

3   questionnaire, which has since been e-filed, that includes questions proposed by the

4   parties and approved by the court.  Doc. no. 184.  The court will conduct the voir dire,

5   and will allow 20 minutes of follow-up questions per side.

6   **VI.     Verdict Form**

7          The court ADOPTS the proposed verdict form jointly proposed by the parties.

8   Doc. no. 183.

9          **IT IS SO ORDERED.**

10  Dated:  January 20, 2017

11                                                  _____

12                                                  PHYLLIS J. HAMILTON
                                                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28