DORON WEINBERG (SBN 46131)
LAW OFFICES OF DORON WEINBERG
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703
Email: doronweinberg@aol.com

Attorney for Defendant
JOHN MICHAEL GALLOWAY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN MICHAEL GALLOWAY,<br><br>Defendants. | **CASE NO. CR-14-0607 PJH**<br><br>**SENTENCING MEMORANDUM OF DEFENDANT JOHN MICHAEL GALLOWAY**<br><br>**DATE: March 15, 2017**<br>**TIME: 2:30 P.M.**<br>**JUDGE: Hon. Phyllis J. Hamilton**<br>**COURT: 3, 3rd Floor** |

Defendant John Michael Galloway recognizes and deeply appreciates the careful, thoughtful consideration given by the Probation Office to the preparation of the final Presentence Report and the sentencing recommendation therein. The recommendation of a sentence of six months incarceration, which is substantially below the advisory Guideline range, apparently reflects an understanding that the offense committed by defendant Galloway, as those committed by the 70-plus other defendants involved in the Northern California foreclosure bid-rigging cases, constitutes conduct well outside the heartland of the kinds of crimes generally prosecuted as violations of the antitrust laws.

These cases arose under a unique set of circumstances.

As is well known, between 2005 and 2007 major financial institutions, such as Lehman Brothers, Merrill Lynch, JP Morgan Chase and Citigroup, principally through their subsidiaries, made millions of high interest, or "sub-prime" loans to borrowers who were not qualified for them and could not repay them, but were charged a rate higher than the prime rate. These risky mortgages were passed on to financial engineers at the big banks who turned them into supposedly low risk securities by putting large numbers of them together in pools. The pooled mortgages were used to back securities known as collateral debt obligations, which were then sliced into tranches and sold to investors, also largely institutional, as Triple A rated securities, but were in fact almost worthless. Then when, inevitably, millions of sub-prime borrowers could not meet their debt obligations, the entire construct collapsed, most literally in the case of Lehman Brothers, and almost took the world financial system with it.

The response of the U.S. government was focused principally on rescuing the major lenders, rather than their victimized borrowers, with billions of dollars in bailout funds. What the government did not do, as is well known, was to call to account, let alone prosecute, the perpetrators of this devastation. Instead, the people prosecuted were those who caused the institutional perpetrators of the scheme themselves to lose money or prevented them from making even more profit. The targets chosen by the government were the borrowers who were enticed to amplify or falsify their applications for sub-prime loans, the brokers and lender representatives who helped them to do so, and the foreclosure auction participants who entered into agreements that withheld from lenders any more money than the lenders themselves demanded.

It must be emphasized that what the defendants in these foreclosure auction cases did was simply agree to pay the banks the amount the banks demanded, rather than more. And, in many cases, had the defendants not bid on the properties, the banks would not have received even the base price they demanded.

It should also be emphasized that the victims in these foreclosure auction bid-rigging cases were solely the institutional lenders who speculated in the real estate market and not the distressed homeowners who lost their properties to foreclosure. By the time the foreclosure auctions and bid-rigging occurred, the mortgage loans had already been defaulted, the properties were foreclosed upon and the homeowners had been or were being evicted. And the restraint of bidding at the auctions had virtually no impact on the homeowners because, particularly in 2008 and 2009, the housing market had become so depressed and the banks' minimum bids were so low that even in the most transparent auction the winning bid would almost never be high enough to cover the outstanding debt, let alone leave a surplus for the homeowners.

This is not to suggest that defendant Galloway and the other defendants charged in these cases did not violate the law. It is only to make clear that, within the meaning of § 3553, the nature and circumstance of John Michael Galloway's offense must be seen as mitigated, and indeed recognized as the type of conduct that is generally treated administratively or civilly, rather than criminally.

We cannot speculate on why the Antitrust Division has chosen to focus so much attention and energy on these bid-rigging cases, but we believe that sentencing under the traditional Antitrust Sentencing Guidelines is inappropriate, and agree with the Probation Officer's assessment that it is the factors identified in 18 U.S.C. § 3553 that should determine the appropriate sentence here.

Based upon those factors, the Probation Office has recommended a term of incarceration of six months, followed by supervised release including a term of location monitoring for an additional six months. We certainly agree with Probation's conclusion that this sentence is sufficient to meet the purposes set forth in § 3553. But, with all respect, we believe that it is greater than necessary to achieve those purposes.

In addition to the nature and circumstances of the offense, some of which have been

discussed above, the history and characteristics of defendant Galloway clearly suggest the propriety of a highly mitigated sentence.

As reflected in the Presentence Report, defendant Galloway, known to friends and family as Michael or Mike, faced many challenges growing up. He was raised in a household that can only be described as turbulent, and ended with the early separation of his father and mother, followed by a period of economic strain during which he and his sister were raised primarily by his grandmother. He also faced rejection and abandonment by his father twice, first at age 7 and again when he attempted a reconciliation at age 30.

Michael eventually became part of a blended family in which he rose to be a mentor and role model to his siblings, as he continues to be to his own children and his siblings' children. As suggested in the Presentence Report, he is an exemplary father, participating regularly and actively in his childrens' school, social, athletic and religious activities.

Plainly, he is a man deeply committed to his community, his faith and his family. The letters submitted on his behalf, copies of which are attached hereto, provide strong evidence of his good character and underscore the aberrant nature of his involvement in the criminal offenses that bring him before this Court. This is particularly reflected in the letters written by the members of the church community in which he has been extremely active.

In assessing the appropriate sentence for Michael Galloway, it is also important for the Court to note that the conduct in this case ended more than six years ago. Michael Galloway and his family have lived under the stress of this pending prosecution and its potential consequences since January 2011, and it has weighed heavily on his relationship with his wife and two young children. As noted in the Presentence Report, it has been necessary for him to seek treatment for depression, and he has been receiving psycho-tropic medication since April 2016.

Although Michael has continued to provide significant financial and emotional support to his family, the impact of this stress cannot be discounted.

Also significant in assessing punishment is the fact that the conviction for a felony in this case will inevitably result in the revocation of Michael's Real Estate Broker's license, and he will be disqualified from applying for reinstatement for at least five years.

In addition, as the Court is aware, restitution in this case could not be imposed upon Michael without his consent, and he has consented to pay full restitution.

Plainly Michael Galloway is deserving of a highly mitigated sentence, one that includes no period of actual incarceration. The only discordant note is the government's suggestion, which is adopted in the Presentence Report's Guidelines calculations, that Michael played a leadership role in the offense. This is apparently based on the fact that Michael employed his brother Nicholas Diaz to participate in some of the bid-rigging activity and, additionally, that Michael organized some of the bid-rigging activity. These elements do not support the characterization of Michael as a leader in the criminal activity. The act of providing his younger brother with an opportunity to participate in and make money from the foreclosure auctions is not nefarious conduct.

Nor does his occasional role in setting up the logistics of a particular auction make him a leader of the overall criminal enterprise. As this Court is aware, more than 70 individuals, almost all of them experienced, sophisticated real estate investors and developers became involve in the bid-rigging activity that occurred in four northern California counties. They all made independent decisions about their participation in this activity, and were not guided or directed to do so by anyone, and certainly not by Michael Galloway. Indeed, Michael was one of the younger and less experienced of the participants, and was taught about the practice of bid-rigging auctions by Doug Dittmer and Michael Marr, and financially backed by Dittmer, Marr and John Schiells in his activities. In fact, he paid fees to both Marr and Schiells for their financial backing. Although Michael has a strong personality and is frequently outspoken, he was not in any true sense a leader in the bid-rigging activity.

Under all of the circumstances of this case, and in light of the factors which the Court is directed to consider under 18 U.S.C. § 3553, it is respectfully suggested that the sentence imposed upon defendant John Michael Galloway should not include a period of actual incarceration, but rather, an appropriate period of home detention and/or location monitoring.

Dated: March 8, 2017

Respectfully submitted,

LAW OFFICES OF DORON WEINBERG

/s/ Doron Weinberg
DORON WEINBERG
Attorney for Defendant
JOHN MICHAEL GALLOWAY